**David A. and Sylvia S. LIPTON, Plaintiffs,**

v.

**DOCUMATION, INCORPORATED, et al., Defendants.**

**No. 80–555–Orl–Civ–EK.**

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 1, 1982.

———

Robert Kornreich, Wolf, Popper, Ross, Wolf & Jones, New York City, Thomas Tew, Tew, Critchlow, Sonberg, Traum & Friedbauer, Miami, Fla., for plaintiffs.

Edward M. Waller, Jr., Diana L. Fuller, Fowler, White, Gillen, Boggs, Villareal, Tampa, Fla., Lawrence G. Mathews, Jr., Fawsett, Smith, MacKinnon & Matthews, Davisson F. Dunlap, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Orlando, Fla., Peter Webster, Bedell, Bedell, Dittmar & Zehmer, Jacksonville, Fla., Jeffrey B. Rudman, Hale & Dorr, Bernard J. Bonn, III, Testa, Hurwitz & Thibeault, Boston, Mass., R. Lee Bennett, Piersol, Boroughs, Grimm & Bennett, Orlando, Fla., Herbert F. Kozlov, Kenneth A. Plevan, Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants.

## MEMORANDUM AND ORDER

KOVACHEVICH, District Judge.

By their Amended and Supplemental Class Action Complaint ("complaint"), plaintiffs seek to assert a class action claim pursuant to Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b) ] and Securities and Exchange Commission Rule 10b–5, as well as various pendent state claims. The plaintiffs concede that their federal securities law claim is based on what has become known as the "fraud on the market" theory. Thus, it is alleged that "plaintiffs and other members of the class relied, to their damage, on the integrity of the market prices of Documation securities during the class period in purchasing their Documation securities"; and that, as a result of the supposed misrepresentations, "the market prices of Documation securities were artificially inflated during the class period" (Complaint, ¶ 49). There is no allegation that either plaintiff actually relied upon any supposed misrepresentation made by any defendant. Likewise, it is not alleged that the Documation stock would never have been marketed but for the fraud alleged.

Defendants moved to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted because it lacks any allegation of actual reliance by either plaintiff upon any supposed misrepresentation made by any defendant. *See generally Huddleston v. Herman & MacLean*, 640 F.2d 534, 543 (5th Cir.1981), *cert. granted*, 456 U.S. 914,

102 S.Ct. 1766, 72 L.Ed.2d 173 (1982); *Dupuy v. Dupuy,* 551 F.2d 1005, 1014 (5th Cir.1977); *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880, 884 (5th Cir.1973). Defendants argued further that the decision in *Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (en banc), *petition for cert. filed,* 50 U.S.L.W. 3377 (U.S. Nov. 2, 1981) (No. 81–839), requires dismissal because the Court in *Shores* adopted only a qualified version of the "fraud on the market" theory, which does not apply to the facts as alleged in this case.* According to defendants, *Shores* holds that the requirement of pleading and proving reliance in an action under Section 10(b) of the 1934 Act and Rule 10b–5 is excused only when a plaintiff pleads (and subsequently proves) that the security he purchased "would never have been issued or marketed" (647 F.2d at 470) but for the fraud alleged and that a plaintiff who alleges and is able to prove only that the fraud alleged had an adverse effect upon the price of the security purchased is not entitled to recover.

On August 18, 1982, this Court issued a Memorandum and Order denying defendants' motions to dismiss. In doing so, this Court said:

> "The Court [in *Shores* ] did not expressly adopt the fraud on the market theory recognized in the Second and Ninth Circuits, but implicit in *Shores* is an approval of the theory. The *Shores* decision relied heavily upon *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied* 429 U.S. 816 [97 S.Ct. 57, 50 L.Ed.2d 75] (1976) (the leading case sanctioning the fraud on the market theory) in its holding that the fraud on the market theory permitted recovery by a plaintiff who purchased securities, without actual reliance on the documents which were part of a fraudulent scheme, when the securities would never have been issued without the fraud. Far from limiting the fraud on the market theory, *Shores* extended the open market causation approach to the fact situation before the

Court." (Memorandum and Order at 11–12.)

Defendant Peat Marwick Mitchell & Co. ("PMM") (in a motion joined by the remaining defendants) promptly requested the Court to amend its August 18, 1982 Memorandum and Order by certifying, pursuant to Title 28, United States Code, Section 1292(b), that the Memorandum and Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The "controlling question of law" which PMM urges is involved is:

> "Whether a complaint seeking damages for alleged violations of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b) ] and Securities and Exchange Commission Rule 10b–5 states a claim upon which relief can be granted when the complaint, asserting a 'fraud on the market' theory, alleges merely that plaintiff purchased securities relying 'on the integrity of the market prices' of those securities and that because of the misrepresentations and omissions alleged, 'the market prices of ... [the] securities were artificially inflated,' and there is no allegation that the securities would not have been marketed at all but for the misrepresentations and omissions complained of."

After carefully considering the memoranda filed by the parties and oral argument, the Court adheres to its original conclusion that *Shores* implicitly accepted an unqualified version of the "fraud on the market" theory, such as that explicitly adopted in *Panzirer v. Wolf,* 663 F.2d 365 (2d Cir. 1981), *cert. granted sub nom. Price Waterhouse v. Panzirer,* 458 U.S. 1105, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982); and *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). However, the Court rec-

---

* The *Shores* decision is binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* *Alabama,* 661 F.2d 1206 (11th Cir.1981).

ognizes that there is support for PMM's position that *Shores* approved only a very narrow version of the "fraud on the market" theory. *See, e.g., Dekro v. Stern Brothers & Co.*, 540 F.Supp. 406 (W.D.Mo. 1982); *Kennedy v. Nicastro*, 517 F.Supp. 1157 (N.D.Ill.1981); Note, *The Fraud-on-the-Market Theory*, 95 Harv.L.Rev. 1143 (1982).

Considering the criteria for certification contained in Section 1292(b), it is apparent that the question involved in the Court's August 18, 1982 Memorandum and Order is purely a legal one. Likewise, because the claim under Section 10(b) and Rule 10b–5 provides the sole basis for subject matter jurisdiction, it is apparent that the question is a controlling one. Moreover, as previously indicated, there is substantial ground for difference of opinion regarding the extent to which *Shores* accepted and approved the "fraud on the market" theory. Finally, there is a substantial likelihood that an immediate appeal under Section 1292(b) might materially advance the ultimate termination of this litigation, while the delay resulting from such an appeal would appear to be minimal given the time restraints imposed by Rule 5, Federal Rules of Appellate Procedure. In short, it would appear that the question regarding the extent to which *Shores* allows a plaintiff to plead and prove "fraud on the market" as an alternative to pleading and proving actual reliance is precisely the type of question for which Section 1292(b) was drafted. *See* S.Rep. No. 2434, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad.News 5255; 9 Moore's Federal Practice ¶ 110.22[2] at 259.

For the reasons set forth above, it is,

ORDERED that the Court's Memorandum and Order of August 18, 1982, is hereby amended by adding at the end thereof the following paragraph:

"The Court certifies that this Memorandum and Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termina-

tion of this litigation. The controlling question of law is: Whether a complaint seeking damages for alleged violations of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b) ] and Securities and Exchange Commission Rule 10b–5 states a claim upon which relief can be granted when the complaint, asserting a 'fraud on the market' theory, alleges merely that plaintiff purchased securities relying 'on the integrity of the market prices' of those securities and that because of the misrepresentations and omissions alleged, 'the market prices of … [the] securities were artificially inflated,' and there is no allegation that the securities would not have been marketed at all but for the misrepresentations and omissions complained of."

### ORDER

The Court having on this day issued a Memorandum and Order certifying a controlling question of law to the United States Court of Appeals for the Eleventh Circuit, pursuant to Title 28, United States Code, Section 1292(b), it is

ORDERED that the request of defendant Peat Marwick Mitchell & Co. to stay further proceedings in this case pending a decision by the United States Court of Appeals on its petition for permission to appeal from this Court's Memorandum and Order of August 18, 1982, as amended, is granted; it is further

ORDERED that all proceedings in this case are hereby stayed pending a decision by the United States Court of Appeals on the petition for permission to appeal from this Court's Memorandum and Order of August 18, 1982, to be filed by defendant Peat Marwick Mitchell & Co. and, upon authorization to appeal being granted by the United States Court of Appeals, until the issues presented by that appeal are decided by that Court.